UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NICHOLAS JOHN MURRAY,

      Plaintiff,

v.                                                  Case No. 8:23-cv-2422-CPT

LELAND DUDEK, Acting
Commissioner of Social Security,[1]

      Defendant.
_____/

**O R D E R**

    The Plaintiff seeks judicial review of the Commissioner's denial of his claim for Supplemental Security Income (SSI).  (Doc. 12).  For the reasons discussed below, the Commissioner's decision is affirmed.

I.

    The Plaintiff was born in 1984, obtained a GED, and has past relevant work experience as an announcer and mail clerk.  (R. 136, 150).  The Plaintiff applied for SSI in September 2019, alleging disability as of July 2019 due to schizophrenia, paranoia, and mood disorder.  *Id.* at 154–55.  The Social Security Administration

---

[1] Mr. Dudek became the Acting Commissioner of Social Security on February 16, 2025.  Pursuant to Federal Rule of Civil Procedure 25(d), Mr. Dudek is substituted for the former Acting Commissioner, Michelle King, as the Defendant in this suit.

(SSA) denied the Plaintiff's application both initially and on reconsideration. *Id.* at 166, 182.

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in January 2023. *Id.* at 130, 211. At the hearing, the Plaintiff elected to proceed pro se after being advised of his right to counsel and testified on his own behalf. *Id.* at 130–53. A vocational expert (VE) also testified. *Id.*

In February 2023, the ALJ determined that the Plaintiff (1) had not engaged in substantial activity since his application date in September 2019; (2) had the severe impairments of schizophrenia and depression; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings,[2] including—of significance here—Listings 12.03 and 12.04 relating to various mental disorders; (4) had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with some nonexertional limitations; and (5) based on the VE's testimony, could engage in his past relevant work as a mail clerk, as well as in other jobs that exist in significant numbers in the national economy. *Id.* at 11–23. In light of these findings, the ALJ concluded that the Plaintiff was not disabled. *Id.* at 23.

---

[2] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA deems considerable enough to prevent a person from performing any gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits. 20 C.F.R. § 416.920(a)(4)(iii); *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

The Appeals Council denied the Plaintiff's subsequent request for review. *Id.* at 1–7. Accordingly, the ALJ's decision became the final decision of the Commissioner. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021) (citation omitted).

## II.

The Social Security Act (the Act) defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).[3] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[4] Under this process, an ALJ must assess whether a claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his

---

[3] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[4] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

3

RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). Although a claimant bears the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, a claimant must then prove he cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the claimant's disability application after a hearing. 42 U.S.C. § 405(g). Judicial review is confined to ascertaining whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citations omitted). In evaluating whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh

4

the evidence, or make credibility determinations.  *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)).  Further, while a court will defer to the Commissioner's factual findings, it will not defer to his legal conclusions.  *Viverette*, 13 F.4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

III.

The Plaintiff raises two challenges on appeal: (1) the ALJ erred in going forward with the hearing despite the Plaintiff's inability to understand the proceeding and to execute a valid waiver of his right to counsel; and (2) the ALJ also erred in finding that the Plaintiff did not satisfy the criteria for Listings 12.03 and 12.04.[5]  (Doc. 12).  Each of these issues will be addressed in turn.

A.

It is well settled that a claimant is statutorily entitled to be represented by counsel at an ALJ hearing.  *See Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997) (per curiam) (citing *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) (per curiam)).  To effectuate this right, the Commissioner must notify a claimant of the right before the hearing and must also "advise the claimant of the availability . . . of legal . . . organizations which provide legal services free of charge."  42 U.S.C. § 406(c); *see also*

---

[5] The Court has combined the Plaintiff's challenges to the ALJ's findings under Listings 12.03 and 12.04 into a single issue to facilitate its disposition of same.

42 U.S.C. § 1383(d) (stating that the provisions of section 406, which address old age, survivors and disability insurance, also apply to SSI).

Once a claimant has been apprised of his right to counsel, he may knowingly, intelligently, and voluntarily waive that right. *See Thomas-Joseph v. Comm'r of Soc. Sec.*, 2022 WL 1769134, at *2 (11th Cir. June 1, 2022) (per curiam) (citing *Brown v. Shalala*, 44 F.3d at 934–35). An ALJ's determination that a claimant has waived his right to counsel will be upheld on appeal if it is supported by substantial evidence. *See Reynolds v. Soc. Sec. Admin.*, 679 F. App'x 826, 827 (11th Cir. 2017) (per curiam); *Coven v. Comm'r of Soc. Sec.*, 384 F. App'x 949, 950 (11th Cir. 2010) (per curiam).

Irrespective of whether a claimant waives the right to be represented by an attorney, an ALJ has an independent duty to compile a full and fair record regarding the claimant's disability application. *Brown*, 44 F.3d at 934 (citation omitted). This duty necessitates that an ALJ "investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2000). In doing so, the ALJ must assemble the pertinent evidence concerning a claimant's medical history for at least the twelve months preceding the claimant's application. *See* 20 C.F.R. § 416.912(b)(1).

An ALJ's obligation to compile a full and fair record rises to a "special duty" when a pro se claimant does not properly waive his right to counsel. *Kelley v. Heckler*, 761 F.2d 1538, 1540 n.2 (11th Cir. 1985) (per curiam) (citation omitted); *see also Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982). This heightened duty dictates that an

6

ALJ "conscientiously probe into, inquire of, and explore for all the relevant facts," and essentially develop "a record which shows that the claimant was not prejudiced by [the] lack of counsel," *Brown*, 44 F.3d at 934–35 (quoting *Clark v. Schweiker*, 628 F.2d 399, 404 (5th Cir. July 1981)).

Regardless of whether an unrepresented claimant has validly waived his right to a lawyer, he is not entitled to a remand to the Commissioner unless he makes a showing of prejudice. *Kelley*, 761 F.2d at 1540 nn. 2, 3. This at least requires a claimant to demonstrate "that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from [the] claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Id*. at 1540 (citing *Smith*, 677 F.2d at 830).

The standard for remand differs to a "degree" when a pro se claimant has not competently waived his right to an attorney. *Kelley*, 761 F.2d at 1540 n.2. In such a situation, a reviewing court need not "'determine that the presence of counsel would necessarily have resulted in any specific benefits in the handling of the case before the ALJ.'" *Brown*, 44 F.3d at 935 (quoting *Clark*, 652 F.2d at 404).

Here, in the period leading up to the ALJ hearing, the Plaintiff was housed at a forensic mental health facility and was deemed to be incompetent in a state criminal case in which he was charged with felony battery. (R. 100–04, 391). Roughly two weeks before the hearing, however, the Plaintiff was again evaluated and found to be competent. *Id.* at 115–19.

The next day, an SSA representative spoke with the Plaintiff on the telephone to arrange for him to take part in the hearing. (R. 446). During that conversation, the representative supplied the Plaintiff with information regarding his right to counsel and noted in his report that the Plaintiff comprehended that information. *Id.*

At the hearing, the Plaintiff appeared telephonically and was unaccompanied by an attorney. *Id.* at 132–33. The ALJ acknowledged at the start of the proceeding that the Plaintiff was located in a mental health facility and explained to the Plaintiff that he had the right to be represented by a lawyer who could help him prepare for the hearing, collect evidence, determine if witnesses were needed, and send the Plaintiff for an examination if necessary. *Id.* The ALJ also noted that counsel was typically only paid based on the potential backpay award if a claimant won. *Id.*

The ALJ then asked whether the Plaintiff understood his right to an attorney, and if so, whether he wished to waive that right and proceed with the hearing or whether he preferred instead to seek someone to represent him. *Id.* at 133. In response to this query, the Plaintiff informed the ALJ that he wanted to "go forward." *Id.* The ALJ then continued with the hearing.

The Plaintiff now contends that he could not have validly relinquished his right to counsel because he was deemed to be incompetent in the state court matter in advance of the hearing. (Doc. 12 at 2–13). This contention misapprehends the record evidence. As noted above, the Plaintiff was determined to be competent in his state criminal case approximately two weeks before the hearing. (R. 115–19). The Plaintiff

does not address this fact, much less explain why it is not dispositive of his competency argument. The Plaintiff's first challenge fails on this basis alone.

Even were that not the case, the record reveals that the Plaintiff was capable of waiving his right to counsel. The report of the competency assessment performed close-in-time to the ALJ hearing described the Plaintiff as being able to comprehend the legal charges against him, the possible penalties, and the adversarial nature of the legal process. *Id.* The report also described the Plaintiff as having the capacity to disclose pertinent information to his attorney, to behave suitably in the courtroom, and to testify to the relevant facts. *Id.*

Furthermore, consistent with these findings, the ALJ concluded given his observations of the Plaintiff at the hearing that the Plaintiff grasped the claims process and testified coherently and appropriately at the proceeding. *Id.* at 19. The ALJ observed in this respect that although the Plaintiff's answers to some queries were "elongated," the Plaintiff otherwise "addressed the question asked," spoke "candid[ly]," provided "reasoned testimony," and offered responses which "did not indicate any thought abnormalities." *Id.* The ALJ additionally noted that the Plaintiff "did not become off track during the hearing" and exhibited an understanding of the subject matter. *Id.* These facts constitute substantial evidence supporting a finding that the Plaintiff competently waived his right to counsel. *See Granger v. Kijakazi*, 2022 WL 16851868, at *5 (M.D. Ala. Nov. 10, 2022) (stating that "the record provide[d] more than substantial evidence that [the claimant] was cognitively capable of executing a knowing, voluntary, and informed waiver of his right to representation"

9

in part because the claimant "never said he did not understand his rights" and "never asked for clarification from the ALJ"); *cf. Newberger v. Astrue*, 2008 WL 299012, at *2–3 (M.D. Fla. Feb. 1, 2008) (finding that the claimant, who was unable to read, did not effectively waive her statutory right to counsel because she made apparent that she "desired legal representation but was having trouble obtaining (and keeping) it").

Not only is there sufficient evidence showing that the Plaintiff validly waived his right to representation, the Plaintiff does not establish that he suffered the requisite prejudice under either of the two standards that might apply here. *Kelley*, 761 F.2d at 1540 n.2 ("It is irrelevant which standard [of review] we apply in the present case because, under either standard, the record as a whole indicates that [the claimant] was not prejudiced by his lack of counsel at the hearing."). At the hearing, the ALJ questioned the Plaintiff fully about his competency and his mental health more broadly. The ALJ's areas of inquiry included the Plaintiff's memory, hallucinations, paranoid thoughts, crying spells, panic attacks, suicidal ideations, difficulties sleeping, ability to concentrate, and his energy and appetite levels. (R. 139–49). The ALJ also probed the Plaintiff about the care he was receiving at the mental health facility where was residing and any medication side effects. *Id.* Additionally, in his decision, the ALJ reviewed at length the Plaintiff's medical history, commencing with the treatment the Plaintiff obtained as far back as 2008. *Id.* at 16. In short, the ALJ gathered "all of the relevant evidence" relating to the Plaintiff's mental health and "consider[ed] all of th[at] evidence . . . in reaching his" disability determination. *Kelley*, 761 F.2d at 1540; *see also Graham*, 129 F.3d at 1423 (determining that the record was adequate where the

"ALJ's questioning brought out all aspects of how [the claimant's] symptoms affected her" and the "ALJ's opinion . . . thoroughly evaluated [the claimant's] medical history").

In an effort to avoid this conclusion, the Plaintiff points to the ALJ's purported failure to secure "updated medical records" from the mental health facility where the Plaintiff was situated at the time of the hearing or from the jail where he was incarcerated before and after that time frame. (Doc. 12 at 11). This contention is unavailing.

To start, the Plaintiff's treatments notes from the mental facility were submitted to the SSA after the ALJ rendered his unfavorable decision and, according to the Appeals Council, did not give rise to a reasonable probability that the ALJ would have rendered a different disability determination. (R. 2). The Plaintiff does not contest this ruling by the Appeals Council and has therefore waived any such argument. *See Grant v. Soc. Sec. Admin., Comm'r*, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (concluding that a party abandons a claim when, among other things, he "raises it in a perfunctory manner without supporting arguments and authority") (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014)); *Battle v. Comm'r, Soc. Sec. Admin.*, 787 F. App'x 686, 687 (11th Cir. 2019) (per curiam) ("Issues raised in a perfunctory manner . . . are generally deemed to be waived.") (internal quotation marks and citation omitted); *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (per curiam) (finding that a plaintiff waived an argument "because he did not elaborate on [the] claim or provide citation to authority about [it]") (citation omitted).

Moreover, the Plaintiff does not identify any information in the mental health facility materials that establishes he suffered prejudice.  *See Kelley*, 761 F.2d at 1540.  At most, the Plaintiff suggests only that these materials would have alerted the ALJ to the Plaintiff's earlier "incompetency adjudication."  (Doc. 12 at 11–12).  This contention ignores the later finding of competency and is thus meritless.

As for the Plaintiff's time in jail, the Plaintiff told the SSA representative during their discussion before the hearing that he did not receive any treatment since the last evidence in the file because he had been in jail.  (R. 446).  The Plaintiff's bare-bones assertion that there may nonetheless be jail records which might have helped him (Doc. 12 at 11) is plainly insufficient.  *See Graham*, 129 F.3d at 1423 (rejecting the claimant's argument that the record was incomplete in part because the claimant did not designate "anything in the record which suggest[ed] that additional medical evidence specific to her situation might [have] be[en] gathered," nor did "she allege[ ] undiscovered facts or an undeveloped avenue of inquiry"); *Smith*, 677 F.2d at 830 (concluding that a claimant was not prejudiced by the lack of counsel where the "[c]laimant's proffer of prejudice amount[ed] to no more than speculation[ ] on [the] ways in which an attorney could have bolstered his credibility before the ALJ").

## B.

The Plaintiff's second challenge—as referenced previously—centers around Listings 12.03 and 12.04, both of which pertain to a claimant's mental impairments.  The first of these listings defines the schizophrenia spectrum and other psychotic

disorders,[6] while the second concerns depressive, bipolar, and related disorders.[7]  20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.03, 12.04.  The Plaintiff's second challenge fails as well.

As alluded to above, a claimant bears the burden of proving that one or more of his afflictions meet or equal a listed impairment.  *See Bellew v. Acting Comm'r of Soc. Sec.*, 605 F. App'x 917, 920 (11th Cir. 2015) (per curiam) (citing *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991)).  To "meet" a listing, "a claimant must have a diagnosis included in the Listings" and must also supply medical reports showing that his malady fulfills "the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (per curiam) (citing 20 C.F.R. § 404.1525(a)–(d)) (internal quotation marks omitted).  And to "equal" a listing, "the medical findings must be at least equal in severity and duration to the listed findings." *Id.*

Listings 12.03 and 12.04 each consist of three paragraphs.  The first paragraph in both, Paragraph A, delineates the diagnostic standards required to medically substantiate a claimant's mental disorder; the second paragraph in both, Paragraph B, establishes four categories of functional limitations relative to a claimant's mental

---

[6] The schizophrenia spectrum and other psychotic disorders are "characterized by delusions, hallucinations, disorganized speech, or grossly disorganized or catatonic behavior, causing a clinically significant decline in functioning."  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(B)(2)(a).

[7] Depressive, bipolar, and related disorders are "characterized by an irritable, depressed, elevated, or expansive mood, or by a loss of interest or pleasure in all or almost all activities, causing a clinically significant decline in functioning."  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(B)(3)(a).

impairment; and the third paragraph in both, Paragraph C, addresses "serious and persistent mental disorders." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A. To fall within the ambit of either Listing 12.03 or Listing 12.04, a claimant must demonstrate that he meets the elements of Paragraph A (which are different for the two listings) *and* either Paragraph B or Paragraph C (which are the same for the two listings). *Id.* at § 12.01.

There is no dispute here that the Plaintiff fulfills the requirements of Paragraph A for both listings. The only question is whether the Plaintiff satisfies the strictures of Paragraphs B or C. The Court proceeds to that issue now.

As referenced above, Paragraph B sets forth functional criteria in the areas of mental functioning that a person uses in a work setting. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.03, 12.04. To assess a claimant's mental condition under these measures, an ALJ must evaluate the extent to which a claimant's medically determinable impairments affect the following four domains: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.* To satisfy Listings 12.03 or 12.04, a claimant must show that he has an extreme limitation in one, or a marked limitation in two of these areas. *Id.*

In this case, the ALJ concluded that the Plaintiff displayed only a moderate limitation in each of the above four categories and that the Plaintiff therefore did not fulfill the Paragraph B requirements. (R. 14–15). In rendering this determination, the ALJ largely predicated his findings on the Plaintiff's compliance with his anti-

14

psychotic medication. *Id.* The ALJ explained, for example, that according to the record evidence, the Plaintiff "ha[d] been able to interact appropriately with medical providers and staff *while compliant with anti-psychotic medication*," and that "none of the [Plaintiff's] medical providers indicated that he lack[ed] adequate insight about his impairment and/or prognosis *when he [wa]s on the correct medication*[.]" *Id.* (emphasis added).

The Plaintiff initially contends that, in relying on his behavior while taking psychotropic medication, the ALJ neglected to consider that the Plaintiff's severe mental impairments prevented him from regularly taking his prescribed drugs. (Doc. 12 at 19–20). In support of this contention, the Plaintiff asserts that the bulk of the record evidence pertains to periods when his care was managed for him, such as when he was incarcerated, held under the Baker Act, committed to a mental facility, or enrolled in a residential treatment program. *Id.* The Plaintiff, however, does not cite any legal authority to buttress his argument and has thus waived any such contention. *See Grant*, 2022 WL 3867559, at *2; *Battle*, 787 F. App'x at 687; *Outlaw*, 197 F. App'x at 828 n.3.

Even were that not the case, the Plaintiff's argument overlooks the relevant Regulation, which states that the Commissioner may deny SSI benefits when a claimant, without good reason, fails to follow a prescribed course of treatment that could restore his ability to work. *See* 20 C.F.R. § 416.930(b) (cautioning claimants that if they "do not follow the prescribed treatment without a good reason, [the SSA] will not find [them to be] disabled[.]"). Here, the ALJ determined as part of his RFC

analysis that the Plaintiff's history of incarceration and Baker Act admissions were often preceded by his failure to take his psychotropic medication and that the Plaintiff became stable once he complied with his prescription protocols. (R. 16–19). The ALJ also determined that the Plaintiff made a choice not to adhere to his medication regimen since he did not report any debilitating side effects from taking those drugs other than drooling when the dosage was too high. *Id.* at 19. Substantial evidence supports the ALJ's findings under the circumstances presented. *See Flemming v. Comm'r of the Soc. Sec. Admin.*, 635 F. App'x 673, 677 (11th Cir. 2015) (per curiam) (ruling that substantial evidence bolstered the ALJ's assessment that the claimant's "psychotic behavior was mainly self-induced," where the record showed that he "did not exhibit psychotic behavior when in compliance with treatment programs and when not self-medicating with marijuana or abusing other substances").

The Plaintiff alternatively asserts that the ALJ erred in concluding he suffered only a moderate limitation in the Paragraph B categories of interacting with others and adapting or managing oneself. With respect to the matter of interacting with others, the ALJ grounded his determination—as alluded to above—on the fact that the Plaintiff was able to engage appropriately with medical providers when he was taking his anti-psychotic medication. (R. 14). The ALJ further observed that, despite the Plaintiff's claims to the contrary, there was no indication in the record that he struggled when dealing with family, friends, or significant others. *Id.* The ALJ noted as well that the Plaintiff exhibited a proper demeanor during his psychiatric assessments, was cooperative when on medication, and expressed a desire to obtain employment. *Id.*

16

As for adapting and managing oneself, the ALJ recounted that when in compliance with his medication protocols, the Plaintiff maintained suitable hygiene and attire, could complete chores, and did not quarrel with his medical providers. *Id.* The ALJ noted too that there were no medical source statements evidencing that the Plaintiff would have considerable difficulty adjusting to new developments in his life. *Id.*

In response to these findings by the ALJ, the Plaintiff identifies other evidence in the record purportedly reflecting that he suffered from extreme restrictions in the areas of interacting with others and adapting or managing himself. By way of example, the Plaintiff highlights treatment notes showing that he was housed in a single cell in the mental health component of the Pinellas County Jail due to paranoia and an inability to interact appropriately with those around him; that he had a propensity to use racial slurs and yell at the staff; that there were occasions when he was restrained in a five-point chair or hid under his mattress to avoid jail employees; that he at times refused to eat meals, shower, or dress; and that he left feces in his cell even though he had access to a toilet. (Doc. 12 at 20–22).

There are a number of problems with the Plaintiff's line of argument. First, "[u]nder a substantial evidence standard of review, [a claimant] must do more than point to evidence in the record that supports h[is] position; [ ]he must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam)). The Plaintiff does not do so here.

Second, the Plaintiff's line of argument effectively asks the Court to re-weigh the evidence, which it cannot do. *Carter*, 726 F. App'x at 739. This is especially so given that, elsewhere in his decision, the ALJ thoroughly reviewed the bulk of the items the Plaintiff now suggests he overlooked. *See* (R. 15–20).

Third, to the extent that the ALJ may not have explicitly delineated in his decision some of the information upon which the Plaintiff now relies, any such omission is immaterial. It has long been established that an ALJ need not set forth every piece of evidence in his decision, so long as his decision demonstrates that he considered the claimant's medical condition as a whole. *See Stowe v. Soc. Sec. Admin., Comm'r*, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). It is apparent from the ALJ's decision that he did so here.

The Plaintiff's final argument as part of his second challenge is that the ALJ wrongly determined he did not meet the Paragraph C criteria in Listings 12.03 and 12.04. Under Paragraph C, a claimant must show that his mental disorder is "serious and persistent, that is, [he has] a medically documented history of the existence of the disorder over a period of at least [two] years." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.03, 12.04. In addition, there must be evidence of both (a) "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [a claimant's] mental disorder;" *and* (b) "[m]arginal adjustment, that is, [a claimant has] minimal capacity

to adapt to changes in [his] environment or to demands that are not already part of [his] daily life." *Id.* (internal citations omitted).

The only controverted issue here is whether the Plaintiff satisfies the "marginal adjustment" requirement. The Regulations discuss how the SSA evaluates this element, explaining:

> [The SSA] will consider that [a claimant has] achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of [the claimant's] symptoms and signs and to deterioration in [his] functioning; for example, [he has] become unable to function outside of [his] home or [in] a more restrictive setting, without substantial psychosocial supports. Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of [his] mental disorder, evidence may document episodes of deterioration that have required [the claimant] to be hospitalized or absent from work, making it difficult for [him] to sustain work activity over time.

*Id.* at § 12.00(G)(2)(c) (internal citation omitted).

In this case, the ALJ determined that there was "no evidence of marginal adjustment" and based this finding on the assessments rendered by a consulting psychiatrist, Dr. Alfred Jonas, who—at the ALJ's request—examined the Plaintiff's mental impairments under both Paragraphs B and C. (R. 15) (citing *id.* at 1088–92). As pertinent here, Dr. Jonas opined that the Plaintiff's mental disorder was "serious and persistent," and that there was evidence of "medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the [Plaintiff's] mental disorder." *Id.* at 1091. Dr. Jonas did not respond, however, when asked whether there was evidence

of marginal adjustment.  *Id.*  In other words, Dr. Jonas did not indicate one way or the other whether this criterion was met.  *Id.*

In his decision, the ALJ deemed Dr. Jonas's assessments to be partially persuasive, reasoning:

> Dr. Jonas's opinions are consistent with those of the competency evaluators in the record and with the objective examination findings at both the State hospital and the Boley Center[8] while the [Plaintiff] was compliant with medication.  Specifically, Dr. Jonas diagnosed schizophrenia and substance abuse and noted a range of mild to extreme limitations interacting with others; none to extreme limitations with concentration, persistence, and pace; and moderate to extreme limitations with [the] ability to manage oneself, noting that when the [Plaintiff] was using substances and not taking antipsychotic medications, he will be extremely functionally impaired.  However, the doctor also noted that when the [Plaintiff] was not using substances and was medication compliant, the evidence showed he was much closer to normalized.  The doctor further noted the [Plaintiff] only met the first part of the "C" criteria, [including] that treatment and/or a highly structured setting diminished the signs and symptoms of the [Plaintiff's] disorder, but it was unknown whether the [Plaintiff] would have minimal adjustment if the [Plaintiff] did not abuse substances and was compliant with antipsychotic medications consistently.  Based on the last record from the Boley Center, the [Plaintiff's] ability to meaningfully participate in the hearing, and the prior administrative agency findings, the undersigned finds the moderate limitations within the range opined by Dr. Jonas are more persuasive than the extreme limitations.

*Id.* at 20.[9]

---

[8] The Boley Center is a multidisciplinary rehabilitation and treatment center where the Plaintiff resided in or around 2019 while serving a sentence on burglary charges.  (R. 17–19).

[9] The Plaintiff does not dispute the ALJ's weighing of Dr. Jonas's opinion and has thus waived the right to do so.  *See Grant*, 2022 WL 3867559, at *2; *Battle*, 787 F. App'x at 687; *Outlaw*, 197 F. App'x at 828 n.3.

The Plaintiff now contends that the ALJ's determination the Plaintiff did not satisfy the "marginal adjustment" requirement is unsupported because there is a dearth of evidence demonstrating "how [the] Plaintiff adapt[ed] to his environment in his daily life outside of highly structured environments of confinement, commitment, and in residential mental health treatment." (Doc. 12 at 23). This contention does not survive scrutiny.

By assessing a moderate limitation in the domain of adapting and managing oneself under Paragraph B, the ALJ determined that the Plaintiff's "functioning in this area independently, appropriately, effectively, and on a sustained basis" to be "fair." 20 C.F.R. Pt. 404, subpt. P, app. 1, § 12.00(F)(2)(c). To find "marginal adjustment" under Paragraph C, however, the ALJ had to conclude that the Plaintiff had only a "minimal capacity" to "adapt to changes in [his] environment or to demands [which] are not already part of [his] daily life." *Id.* at § 12.00(G)(2)(c). Thus, although Paragraphs B and C involve separate criteria, the ALJ's finding that the Plaintiff had a moderate limitation in the Paragraph B category of adapting or managing oneself substantiates his determination under Paragraph C. *See Bellew*, 605 F. App'x at 927 ("[T]he medical opinions and evidence that [the claimant] had only mild or moderate limitations in activities of daily living, social functioning, and maintaining concentration, persistence, or pace were sufficient to support the ALJ's conclusion that the evidence did not demonstrate that 'even a minimal increase in mental demands or a change in the environment' would predictably cause [the claimant] to decompensate," as required by a prior version of Paragraph C for Listings 12.02, 12.03,

12.04, and 12.06); *Himes*, 585 F. App'x at 764 (addressing a prior version of the Paragraph C criteria for Listing 12.04 and stating that "medical opinions and evidence [which] indicat[ed the claimant] . . . had mild or moderate limitations in activities of daily living, social functioning, and maintaining concentration, persistence, or pace support[ed] the ALJ's conclusion that a minimal increase in mental demands or a change in the environment would not predictably cause [the claimant] to decompensate"); *Swinsinski v. O'Malley*, 2024 WL 1231318, at *7 (M.D. Fla. Mar. 22, 2024) ("[I]n addition to the ALJ's explicit finding that [the claimant] d[id] not satisfy the Paragraph C criteria, the ALJ implicitly found [that the claimant] did not have marginal adjustment when he concluded she had only a moderate limitation in her ability to adapt and manage herself.") (citation omitted); *Deaton v. O'Malley*, 2024 WL 3964925, at *6 (S.D. Fla. Aug. 28, 2024) ("Although the [P]aragraph B and [P]aragraph C criteria are obviously separate, the ALJ's finding that [the claimant] only ha[d] a 'mild' limitation in the area of adapting or managing oneself offer[ed] clear support for the ALJ's finding regarding marginal adjustment.").[10]

The ALJ's marginal adjustment finding is further buttressed by the administrative determinations made by the state agency consulting psychologists at

---

[10] The fact that the ALJ did not elaborate upon his rationale for citing Dr. Jonas's opinion in support of his Paragraph C finding does not alter the Court's conclusion. It is well settled an ALJ need not "mechanically recite the evidence leading to [his] determination" that a claimant does not meet a listed impairment. *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (internal citation omitted); *see also Deaton*, 2024 WL 3964925, at *6 ("[G]iven that an ALJ does not automatically err when she does not make an explicit finding regarding certain listings, the alleged step three error in this case— a conclusory paragraph C finding—does not automatically warrant reversal.").

the initial and reconsideration levels, who likewise deemed the Plaintiff to suffer from only moderate limitations with respect to the Paragraph B functional domains. (R. 19–20). It is also bolstered by the ALJ's finding—uncontested by the Plaintiff—that the moderate limitations within the range opined by Dr. Jonas were more persuasive than the extreme ones, and by the evidence the ALJ detailed in his decision demonstrating the Plaintiff's ability to function when properly medicated. *Id.* at 14–15.

In sum, the substantial evidence standard is a deferential one—"more than a scintilla, but less than a preponderance," *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (quotation omitted)—and is met here.

IV.

In light of all the above, it is hereby ORDERED:

1.      The Commissioner's decision is affirmed.

2.      The Clerk of Court is directed to enter Judgment in the Defendant's favor, to terminate any pending motions, and to close the case.

SO ORDERED in Tampa, Florida, this 31st day of March 2025.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record

23